UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DONALD F.,

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:21-cv-00872-TPK

OPINION AND ORDER

# OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by an Administrative Law Judge on January 15, 2021 following a remand from this Court, determined that a previously-granted period of disability ended on October 31, 2014, and that Plaintiff had not become disabled since that date.  Plaintiff has now moved for judgment on the pleadings (Doc. 10), and the Commissioner has filed a similar motion (Doc. 14).  For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant.

## I.  BACKGROUND

    As noted in this Court's prior decision, *see Fears v. Saul*, 2020 WL 562681 (W.D.N.Y. Feb. 5, 2020), on October 26, 2010, Plaintiff, after applying for social security disability benefits and supplemental security income, was determined to have become disabled as of April 1, 2010 and awarded benefits.  However, on October 31, 2014, Plaintiff was found to be no longer disabled. After that termination was upheld administratively, Plaintiff appeared before an Administrative Law Judge on September 9, 2016.  The ALJ determined that the termination of disability was correct, and the Appeals Council denied review.  Plaintiff appealed to this Court, and, in the decision cited above, the Court reversed and remanded, finding that revised findings were needed "as to the [Plaintiff's] ability to stoop and the vocational expert's opinion on what occupations (if any) exist that someone like plaintiff with that restriction (among others) could perform in the national economy."  *Fears v. Saul*, 2020 WL 562681, at *6.  Following remand, hearing was held before a different ALJ on December 8, 2020.  Plaintiff, a medical expert, Dr. Jaslow, and a vocational expert, Diane Durr, testified at the hearing.

    The Administrative Law Judge issued an unfavorable decision on May 6, 2021.  He first found that when Plaintiff initially awarded benefits, his severe impairments included arteriovenous malformation with headaches, status post gamma knife surgery and hemi-

craniotomy, and deep vein thrombosis, and he was limited to the performance of less than sedentary work with other restrictions as well.  Next, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date.  As of October 31, 2014, the date on which benefits were terminated, the ALJ concluded that Plaintiff had severe impairments including lumbar degenerative disc disease, a history of bilateral hip replacements, a history of repaired arteriovenous malformation with seizure disorder, right arm nerve damage, and headaches.  However, the ALJ determined that these impairments, taken singly or in combination, did not meet the criteria for disability under the Listing of Impairments.

Moving to the next step of the process, the ALJ determined that there had been a decrease in the medical severity of Plaintiff's impairments since October, 2010, allowing Plaintiff, taking into account only those impairments, to perform light work activity with restrictions including never being able to climb ladders, ropes, or scaffolds or balance, being able to handle, finger, and feel frequently with the right hand, and needing to avoid exposure to unprotected heights, uneven surfaces, and dangerous machinery.  Also, Plaintiff could not operate a motor vehicle.  The ALJ next considered whether additional limitations were caused by impairments which developed after the initial determination of disability, and concluded that, even taking such impairments into account, Plaintiff could do sedentary work with both the restrictions described above and restrictions on his ability to stoop, crawl, and be exposed to excessive vibration.  Also, he would need to off task for up to 5% of the workday in addition to taking regularly scheduled breaks.  Although the totality of Plaintiff's restrictions were severe enough to preclude him from performing his past relevant work, the ALJ determined, based on the vocational testimony, that Plaintiff could do jobs like order clerk, lens inspector, and election clerk.  The ALJ also found that these jobs existed in significant numbers in the national economy.  As a result, the ALJ concluded that Plaintiff's disability ended on October 31, 2014, and that he had not become disabled again since that date.

Plaintiff, in his motion for judgment on the pleadings, raises two issues, stated as follows:

> 1.  The RFC finding that Plaintiff will only be off-task up to 5% of the workday is not supported by substantial evidence, because the ALJ gave no narrative explanation of how he arrived at the finding.
>
> 2.  The RFC is not supported by substantial evidence, because the ALJ to address (sic) or consider the side effects of Plaintiff's medications.

Plaintiff's Memorandum, Doc. 10-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

At the first administrative hearing held in 2016, Plaintiff testified that he had pain in his right hip that precluded him from doing manual labor.  He also had numbness in his right hand

and experienced seizures about three times per month.  Plaintiff was able, however, to do laundry and housecleaning as well as to go shopping occasionally, and he coached a flag football team.  He said that he still had pain after hip replacement surgery, which happened in 2014, and that he needed to alternate between sitting and standing every 15 minutes.  Walking was also an issue.  He listed a number of medications which he took and said that they caused drowsiness and sleepiness, resulting in his napping every day.

At the next hearing, held in 2020, Plaintiff said his primary problem was low back pain.  The pain radiated into his hip and made it hard for him to walk, stand, or sit for any length of time.  He no longer did his own grocery shopping.  Plaintiff also said that he had pain in his right arm due to nerve damage and that it was getting worse.  He was still having seizures on occasion.  Plaintiff testified that he took pain medication and did physical therapy to treat his back disorder, and said his medication still caused him to be sleepy.  That problem, plus his sleep apnea, caused him to sleep a few hours during the day.

Dr. Jaslow, the medical expert who testified at the second hearing, identified Plaintiff's medical impairments as degenerative disc disease of the lower spine, a history of seizure disorders, a history of bilateral total hip replacements, and right shoulder pain.  He did not think that these impairments, taken singly or in combination, met or equaled the requirements of the Listing of Impairments.  Based on the objective medical evidence, Dr. Jaslow thought that Plaintiff could lift 20 pounds frequently and 50 pounds occasionally, could stand, walk, or sit for six hours a day, could not work around unprotected heights, and had various postural restrictions.  He also could not climb ropes and scaffolding and probably could not climb ladders.

The vocational expert, Ms. Durr, testified at that hearing that Plaintiff's past relevant work included fast food cook, which was a light semi-skilled job.  She was then asked questions about a person with Plaintiff's vocational profile who could do sedentary work with various postural restrictions and who could frequently manipulate, finger, and handle with the right hand.  There were also some environmental restrictions included in the question.  In response, Ms. Durr testified that such a person could not work as a fast food cook but could do jobs like lens inserter, election clerk, and food and beverage order clerk.  Being off task for ten percent of the time would render the person unemployable, but being off task five percent of the time would be acceptable.  Such a person could not maintain employment if he or she were to miss work more than one day per month, however.  If the person could only occasionally handle, finger, and manipulate objects, he or she could still work as an election clerk.  Napping during the day would be work-preclusive.

## B.  Treatment Records

The pertinent medical treatment records show the following.  The Court's summary will be brief since the issue in this case revolves around the ALJ's determinations that Plaintiff would be off task for, at most, 5% of the workday and did not have significant side effects from his medications.

In its prior Opinion and Order, the Court provided this summary of the relevant medical evidence:

> Following the 2010 disability finding, plaintiff had bilateral hip replacement with right hip replacement on March 2014 [R. 109]. On October 29, 2014, Dr. Saeeda Siddiqui evaluated plaintiff following the hip replacement procedure and found that plaintiff could never stoop [R. 619, 622]. Dr. J. Dale found on February 11, 2015, "significant medical improvement related to the [plaintiff's] ability to work has been demonstrated therefore disability is ceased" [R. 109, 112]. Dr. Dale also found that plaintiff had limitations that he should never stoop [R. 109]. Both doctors acknowledged that plaintiff used a cane intermittently [R. 109, 619]. In June 2015, Meggan Shea, F.N.P., treated plaintiff and opined that plaintiff could occasionally stoop [R. 673, 19]; the ALJ gave some weight to Shea's opinion, noting her minimal treatment history with plaintiff and that, as a nurse practitioner, she was not accepted as a medical source [R. 19].

*Fears v. Saul*, 2020 WL 562681, at *2 (W.D.N.Y. Feb. 5, 2020).

Plaintiff's memorandum highlight these additional medical records. Plaintiff was prescribed numerous medications including Levetiracetam, which is used to treat seizure disorders. His dosage of that medication was increased in early 2015, and while he had not had any additional seizures since then, he did report that the medication made him tired and that he was napping during the day. The following year, he experienced occasional seizures, and his medication was again increased in April of 2017. At some point he was also prescribed hydrocodone for back pain.

### C. Opinion Evidence

In addition to the opinion evidence summarized by the Court in its prior Opinion and Order, the record contains a report from Dr. Litchmore, who performed a consultative internal medicine examination on April 17, 2019. Plaintiff reported a history of seizures, with the last one having occurred about a month prior to the examination, as well as back pain and a history of bilateral hip replacements. He was still taking seizure and pain medications. Plaintiff said he was able to shower, bathe, and dress himself as well as to do cooking and cleaning. On examination, he could not walk on heels and toes without difficulty due to hip and back pain. He had limitations on the range of motion of his back and hips. Dr. Litchmore concluded that Plaintiff had a marked limitation on his ability to operate moving machinery or work around unprotected heights, and his back pain limited his ability to operate machinery while seated or to stand or walk for prolonged periods of time as well as to lift and carry heavy weights while standing or walking and to stoop, bend, crawl, and kneel. (Tr. 1797-1800).

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision

of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV.  DISCUSSION

### A.  Being Off Task for 5% of the Workday

Plaintiff's first argument is that the ALJ's finding that Plaintiff would be off task for up to 5% of the workday in addition to customary work breaks "is neither supported nor explained." Plaintiff's Memorandum, Doc. 10-1, at 18.  He contends that decisions from this Court, such as *Michelle A. v. Saul*, 2020 WL 7223235 (W.D.N.Y. Dec. 8, 2020), mandate that an ALJ tie that type of limitation to something in the medical record.  Because, according to Plaintiff, the ALJ did not refer to any part of the record in coming up with this limitation, this case should be remanded for further proceedings.  The Commissioner, in turn, argues that although "the reasoning for the time off-task was not discussed explicitly in [the ALJ's] opinion," the determination was nonetheless supported by substantial evidence, and that even if it were not, it represented a limitation that was more restrictive than any of the medical opinions, so any error was harmless.

The Court begins its analysis of this issue by noting that, as Plaintiff contends, "[c]ase law from this District reflects that if an ALJ believes that an off-task time limitation is necessary, he or she must refer to a medical opinion or other specific evidence in the record that supports

such a limitation." *Michelle A. v. Saul*, 2020 WL 7223235, at *4 (W.D.N.Y. Dec. 8, 2020). While that general proposition is an accurate statement of the law, the facts of that case are somewhat different. There, the record contained evidence from which one could reasonably conclude (as the ALJ did) that the claimant had some level of psychological impairment which affected her ability to stay on task for the entire workday, and the determination that the claimant needed to be off task only 5% of the time, as opposed to some other amount of time, was made by the ALJ without anything in the record to suggest that this limitation was accurate. The same holds true for the other cases cited in *Michelle A.*, but it is not the situation presented here.

      The Commissioner, in the opposing memorandum, cites to *Beckles v. Comm'r of Soc. Sec.,* 2019 WL 4140936 (W.D.N.Y. Aug. 30, 2019), for the proposition that if an ALJ imposes a limitation which, while not supported by the evidence, is more restrictive than any of the medical opinions, any error is basically harmless. In that case, the ALJ had given only partial weight to a consultative medical opinion, but imposed additional restrictions because that opinion did not take one of the claimant's severe impairments into account. The Court determined that the ALJ did not err in doing so, citing to, among other decisions from this Court, *Baker o/b/o Baker v. Berryhill*, 2018 WL 1173782 (Mar. 6, 2018). *Baker* was a case where the ALJ imposed additional mental and psychological restrictions beyond those articulated in the medical opinions based on the claimant's own report of additional limitations. The Court rejected the argument that such findings were erroneous, concluding that " remand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record, inasmuch as any alleged error in this regard inures to the claimant's benefit." *Baker o/b/o Baker v. Berryhill*, *supra*, at *4 (W.D.N.Y. Mar. 6, 2018). In both of these cases, however, the ALJ explained why the additional limitations appeared to be warranted, whereas in this case, the ALJ simply imposed the 5% off-task restriction without any explanation at all.

      Ultimately, the Court concludes that while the ALJ erred in making this specific off-task determination, the error was not sufficiently harmful to warrant a remand. In other cases where, simply in order to give the claimant the benefit of the doubt and not based on any medical evidence, an ALJ imposed an off-task limitation, this Court has determined that remand is not required. *See, e.g., Anissha v. Comm'r of Soc. Sec.*, 2024 WL 123521 (W.D.N.Y. Jan. 11, 2024); *Lesanti v. Comm'r of Soc. Sec.*, 436 F.Supp.3d 639 (W.D.N.Y. 2020). As was the case in those decisions, Plaintiff has not demonstrated in this case that he had limitations in the area of being off-task which exceeded those imposed by the ALJ. Under these particular circumstances, where the record is devoid of any evidence of a severe mental or other impairment which might cause Plaintiff to be off-task, the ALJ's otherwise unsupported finding of an off-task limitation did not prejudice Plaintiff and does not support an order of remand.

### B. Medication Side Effects

      Plaintiff's next argument is that the ALJ did not properly evaluate Plaintiff's testimony about the side effects of his medication, particularly his seizure medication. As noted above, Plaintiff testified that his medications made him sleepy and that he napped for several hours each day. He also reported that side effect to at least one of his doctors. According to Plaintiff, there

is "[n]othing in the ALJ's decision [to] indicate[] that he considered the side effects of Plaintiff's medications when formulating [the] RFC," and the ALJ failed to provide specific reasons for giving Plaintiff's testimony on this subject little or no weight. Plaintiff's Memorandum, Doc. 10-1, at 23. The Commissioner responds that the ALJ's reasoning, while not as explicit as it could have been, is apparent from the decision, and it consisted of crediting the evidence that Plaintiff had no significant side effects - essentially, his failure to report such side effects and his statements, at various time, that there were none - over the evidence that such effects were present to the extent that they would affect his ability to work. The Commissioner further argues that this determination, like any other evaluation of a claimant's subjective report of debilitating symptoms, is entitled to great deference as part of the Court's review of the administrative decision.

As the Commissioner correctly points out, the ALJ did acknowledge Plaintiff's testimony that "[m]edications caused drowsiness and sleepiness, and he would nap during the day." (Tr. 975). The ALJ also made a general finding that "the claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the objective medical and other evidence...." (Tr. 977). He made specific reference to the opinions of Drs. Jaslow and Litchmore, neither of whom imposed any limitations based on side effects of Plaintiff's medications. Plaintiff did not report any such side effects to Dr. Litchmore, and Dr. Jaslow had the benefit of listening to Plaintiff's testimony at the second administrative hearing but nonetheless did not conclude that medication side effects had an impact on Plaintiff's ability to work. Also, there are a large number of treatment records, cited in the Commissioner's memorandum, where Plaintiff either did not report side effects to his medical providers or affirmatively stated that he was not experiencing such effects. *See* Commissioner's Memorandum, Doc. 14-1, at 11. Given this record, the question becomes how specifically an ALJ must discuss a claimant's report of side effects of medication before his implicit discounting of that testimony is acceptable.

In support of Plaintiff's argument, the Court notes that it has been held that

[a]n ALJ's failure to consider a claimant's subjective reports of her symptoms, including the side effects she experiences as a result of her medications, is grounds for remand. *See, e.g., Vinson v. Colvin*, No. 6:15-CV-06006 (MAT), 2015 WL 8482783, at *5 (W.D.N.Y. Dec. 9, 2015) (ALJ erred when he "failed to include in his RFC the side-effects of th[e] medications to which Plaintiff testified, chiefly, her drowsiness and tiredness, lack of ability to pay attention and concentration, difficulty remembering and increased forgetfulness"); *Caternolo v. Astrue*, No. 6:11-CV-6601 (MAT), 2013 WL 1819264, at *13 (W.D.N.Y. Apr. 29, 2013) (ALJ erred when he "failed to consider the side effects of Plaintiff's various medications in determining her RFC").

*Plaza v. Comm'r of Soc. Sec.*, 2020 WL 6135716, at *23 (S.D.N.Y. Oct. 16, 2020). That rule has particular application to the situation where an ALJ fails even to acknowledge testimony or other evidence of significant side effects of a claimant's medication regime. On the other hand, it is

also true that

> [a]n ALJ need not ... explicitly address each and every statement made in the record that might implicate her evaluation of a claimant's credibility as long as "the evidence of record permits us to glean the rationale of an ALJ's decision." *Cichocki [v. Astrue]*, 534 F. App'x [71 (2d Cir. Sept. 5, 2013] at 76 (quoting *Mongeur*, 722 F.2d [1033 (2d Cir. 1983)], at 1040); *see also Colbert v. Comm'r of Soc. Sec.*, 313 F.Supp.3d 562, 580 (S.D.N.Y. 2018) (while the ALJ's credibility determination "did not explicitly address the side effects of [the claimant's] medications, there is ample evidence in the opinion and the record to 'glean the rationale of the ALJ's decision' ") (citation omitted); *accord Franklin v. Colvin,* 2018 WL 1449524, at *8 (S.D.N.Y. Mar. 23, 2018); *Guilfuchi v. Comm'r of Soc. Sec.*, 2016 WL 128207, at *10 (S.D.N.Y. Jan. 12, 2016).

*Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 767 (S.D.N.Y. 2018).  These statements do not necessarily conflict.  Rather, they indicate that when an ALJ acknowledges that a claimant has asserted that there are serious side effects from his medications, discounts the claimant's testimony generally, and the record provides an adequate basis for determining why the ALJ did not accept the testimony about side effects at face value, the Court must affirm the ALJ's decision so long as it finds substantial support in the record.

After reviewing the parties' respective arguments, the Court concludes that the Commissioner's position in this case is the correct one.  This is not a case where the ALJ was unaware or neglected to mention that Plaintiff had reported, at least occasionally, that his medications were causing excessive drowsiness.  It is also a case where that report does not often appear in the record, and that, for the most part, Plaintiff told his treating sources that his medication was not producing any adverse side effects.  The ALJ also concluded that the Plaintiff's testimony was not entirely consistent with the objective and other medical evidence of record, and he relied on opinions from two physicians who were aware either of Plaintiff's subjective claims of side effects or aware of the medications he was taking and who did not suggest that he was limited in any way by the potential or actual side effects of those medications.  In short, the Court is able, from this record, to glean the rationale of the ALJ's decision not to include any limitations arising from medication side effects in the residual functional capacity finding, and that rationale is amply supported by the record.  Consequently, Plaintiff's second claim of error does not provide a basis for remand.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 10), **GRANTS** the Commissioner's motion (Doc. 14), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

/s/ Terence P.  Kemp
**United States Magistrate Judge**